**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA BOOTH<br>241 Florence Ave.<br>Jackson, OH 45640 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| BELLISIO FOODS, INC.<br>100 E. Broadway Street<br>Jackson, OH 45640 | )<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| **Serve Also:**<br>BELLISIO FOODS, INC.<br>c/o Bellisio Foods, Inc. (Stat. Agent)<br>235 Water Street<br>Jackson, OH 45640 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>)<br>) | |

Plaintiff, Joshua Booth, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Booth is a resident of the city of Jackson, Jackson County, Ohio.

2. Defendant BELLISIO FOODS, INC. ("Bellisio") is a foreign corporation that conducts business within the state of Ohio.

3. Bellisio is, and was at all times hereinafter mentioned, an employer within the meaning of the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., and R.C. § 4112 et seq.

4. The relevant location of the events and omissions of this Complaint took place was 100 E. Broadway Street, Jackson, OH 45640.

5. Within 300 days of the adverse employment actions described herein, Booth filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No.: 473-2022-00506 ("EEOC Charge").

6. On or about August 22, 2022, the EEOC issued and mailed Notices of Right to Sue letter to Booth regarding the EEOC Charge.

7. Booth received the Notice of Right to Sue letters from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Booth has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Booth has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Jackson County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under the ADA and the FMLA.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

15. Booth is a former employee of Bellisio.

2

16. At all times noted herein, Booth was qualified for his position(s) at Bellisio.

17. At all times noted herein, Booth could fully perform the essential functions of his job(s), with or without a reasonable accommodation.

18. Booth worked for Bellisio in maintenance from September 29, 2014, until Bellisio unlawfully terminated Booth's employment on or about June 1, 2021.

19. Booth has Type II Diabetes and a back injury; therefore, he is in a protected class for his disabilities.

20. In or around 2018, Booth started seeking medical care for his back injury.

21. Once per month, Booth had an appointment that required him to leave work early.

22. Booth's supervisor at the time, Justin Priest, had no issue with Booth leaving early.

23. Supervisor Dave Moore told Priest to stop letting Booth leave early for these appointments. ("Moore's Discrimination")

24. Because of Moore's Discrimination, Booth sought out FMLA leave.

25. Booth began utilizing qualified intermittent FMLA.

26. In or around 2020, Booth's back was getting worse, which caused him to use his intermittent FMLA more frequently.

27. Bellisio did not like this, and Supervisors Rob Huffer and James Zachariah told Booth that he should find a new job because of his disability and FMLA-usage.

28. Zachariah also told Booth that he would be fired due to his FMLA-usage soon. (Zachariah's Discrimination against Booth)

29. Zachariah's Discrimination against Booth was direct discrimination against Booth.

30. Booth requested reasonable accommodations from Bellisio limiting his time on his feet to help with his back problems. ("Request for Accommodation")

3

31. Bellision failed to respond to Booth's Request for Accommodation.

32. Bellisio failed to engage in the interactive process of finding Booth a reasonable accommodation.

33. Supervisors Huffer and Zachariah often made comments to Booth about how his job was in danger because he was using FMLA leave.

34. In or around the beginning of 2021, Booth complained to Huffer about his comments, and said that he felt Huffer was discriminating against him because of his FMLA leave. ("Booth's First Complaint of Discrimination")

35. On or around May 20, 2021, Booth came in for a normal day of work and noticed that many of the supervisors were called into a meeting.

36. Booth was called into this meeting and found Zachariah, Moore, and a Union Steward, Dallas Rise.

37. In the meeting, Booth was given a writeup for returning late from a break on or around May 15, 2021.

38. Specifically, Booth was told that he clocked out at 1:07pm and came back at 1:29pm.

39. Booth disputed the writeup.

40. The Supervisors told Booth there was nothing they could do and that he had to sign the writeup, but could file a grievance if he wanted.

41. Booth signed and was then escorted out of the building. Despite being told he could grieve the writeup, he was not permitted to see a Union or HR Representative after the meeting.

42. Disparately, other non-disabled employees admitted to taking longer breaks, but were not similarly disciplined or escorted out of the building.

4

43. After this writeup, Booth was placed on suspension. Whenever he tried to call HR, he could never reach anyone.

44. Then, on or around May 29, 2021, Booth received a termination letter stating his employment was terminated as of June 1, 2022.

45. These comments made Booth nervous about the security of his job, so he complained to Huffer about them. This was a protected complaint of FMLA leave retaliation.

46. Not only did Booth dispute this accusation as untrue, but other, non-disabled employees admitted to taking longer breaks and were not similarly disciplined.

47. The temporal proximity between Booth using his FMLA leave more frequently and the disparate treatment against him implies that Bellisio took adverse employment actions against him in retaliation for using more of his FMLA leave.

48. The temporal proximity between Booth's protected complaints and his termination implies that he was actually fired in retaliation against his complaints.

49. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful discrimination.

50. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

51. There was a causal connection between protected complaints and Defendant's termination of Booth.

52. As a result of Bellisio's acts and omissions, Booth has suffered, and will continue to suffer, damages.

## COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA

53. Booth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

54. Booth is disabled.

55. In the alternative, Defendant perceived Booth as being disabled.

56. Booth's condition constituted a physical impairment.

57. Booth's condition substantially impaired one or more of his major life activities including working.

58. Defendant perceived Booth's condition to substantially impair one or more of his major life activities including working.

59. Defendant treated Booth differently than other similarly-situated employees based on his disabling condition.

60. Defendant treated Booth differently than other similarly-situated employees based on his perceived disabling condition.

61. Defendant terminated Booth's employment without just cause.

62. Alternatively, Defendant terminated Booth's employment for pretextual reasons.

63. Defendant terminated Booth's employment based his disability.

64. Defendant terminated Booth's employment based his perceived disability.

65. Defendant violated the ADA when it discharged Booth based on his disability.

66. Defendant violated the ADA when it discharged Booth based on his perceived disability.

67. Defendant violated the ADA by discriminating against Booth based on his disabling condition.

68. Defendant violated the ADA by discriminating against Booth based on his perceived disabling condition.

69. Booth suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

70. As a direct and proximate result of Defendant's conduct, Booth suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: DISABILITY DISCRIMINATION UNDER R.C. § 4112 et seq.**

71. Booth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

72. Booth is disabled.

73. In the alternative, Defendant perceived Booth as being disabled.

74. Booth's condition constituted a physical impairment.

75. Booth's condition substantially impaired one or more of his/her major life activities including working.

76. Defendant perceived Booth's condition to substantially impair one or more of his major life activities including working.

77. Defendant treated Booth differently than other similarly-situated employees based on his disabling condition.

78. Defendant treated Booth differently than other similarly-situated employees based on his perceived disabling condition.

79. Defendant terminated Booth's employment without just cause.

80. Alternatively, Defendant terminated Booth's employment for pretextual reasons.

81. Defendant terminated Booth's employment based his disability.

82. Defendant terminated Booth's employment based his perceived disability.

83. Defendant violated R.C. § 4112 when it discharged Booth based on his disability.

84. Defendant violated R.C. § 4112 when it discharged Booth based on his perceived disability.

85. Defendant violated R.C. § 4112 by discriminating against Booth based on his disabling condition.

86. Defendant violated R.C. § 4112 by discriminating against Booth based on his perceived disabling condition.

87. Booth suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

88. As a direct and proximate result of Defendant's conduct, Booth suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: FAILURE TO ACCOMMODATE UNDER THE ADA

89. Booth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. Booth is disabled.

91. Booth informed Defendant of his disabling condition.

92. Booth requested accommodations from Defendant to assist with his disabilities.

93. Booth's requested accommodations were reasonable.

94. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

95. Defendant failed to engage in the interactive process of determining whether Booth needed an accommodation.

96. Defendant failed to provide an accommodation.

97. Defendant violated the ADA.

98. As a direct and proximate result of Defendant's conduct, Booth suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.01 et seq.**

99. Booth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Booth informed Defendant of his disabling condition.

101. Booth requested accommodations from Defendant to assist with his disabilities.

102. Booth's requested accommodations were reasonable.

103. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

104. Defendant failed to engage in the interactive process of determining whether Booth needed an accommodation.

105. Defendant failed to provide an accommodation.

106. Defendant violated R.C. § 4112.02 by failing to provide Booth a reasonable accommodation.

107. Booth suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

108. As a direct and proximate result of Defendant's conduct, Booth suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT V: RETALIATORY DISCRIMINATION**

109. Booth restates each and every prior paragraph of this complaint, as if it were fully restated herein.

110. As a result of the Defendant's discriminatory conduct described above, Booth complained about the disability discrimination he was experiencing.

9

111. Subsequent to Booth reporting of disability discrimination to his supervisor and employer, Booth's employment was terminated.

112. Defendant's actions were retaliatory in nature based on Booth 's opposition to the unlawful discriminatory conduct.

113. Pursuant to the ADA and R.C. §4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

114. Booth suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA and R.C. § 4112.01 *et seq*.

115. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Booth, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VI: RETALIATION IN VIOLATION OF THE FMLA

116. Booth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. During his employment, Booth qualified for and attempted to take intermittent FMLA leave.

118. Defendant knew Booth took FMLA leave.

119. After Booth utilized his qualified FMLA leave, Defendant retaliated against him.

120. Defendant terminated Booth's employment.

121. Booth's termination was an adverse employment action against him.

122. Defendant's proffered reason for Booth's termination was pretextual.

123. There was a causal link between Booth's medical leave under the FMLA and Defendant's termination of Booth's employment.

124. Defendant actually terminated Booth for his FMLA use.

125. Defendant retaliated against Booth by, among other things, terminating his employment.

126. Defendant's actions show that it willfully retaliated against Booth in violation of U.S.C. § 2615(a).

127. As a direct and proximate result of Defendant's wrongful conduct, Booth is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Booth demands from Defendant the following:

   a) Issue a permanent injunction:

      i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

      ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

      iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

      iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

11

b) Issue an order requiring Defendant to expunge Booth's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Booth for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Booth's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove_____*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney for Plaintiff Joshua Booth*

12

13

## JURY DEMAND

Plaintiff Joshua Booth demands a trial by jury by the maximum number of jurors permitted.

_/s/ Trisha M. Breedlove_

Trisha M. Breedlove (0095852)